UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KELLI SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 08-CV-0598-CVE-FHM |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

On September 3, 2009, United States Magistrate Judge Frank H. McCarthy entered a Report and Recommendation (Dkt. # 16) on plaintiff's request for judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits. The magistrate judge found that the Administrative Law Judge (ALJ) evaluated the record in accordance with the legal standards established by the Commissioner and the courts and that there was substantial evidence in the record to support the ALJ's decision. Accordingly, the magistrate judge recommended that the Commissioner's decision denying disability benefits be affirmed.

Plaintiff filed timely objections pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b) (Dkt. # 17). Accordingly, the Court has conducted a de novo review. The plaintiff argues that the Magistrate Judge made two errors. First, plaintiff argues the Magistrate Judge was incorrect in finding that the ALJ properly analyzed the medical evidence, particularly the evidence from plaintiff's treatment at Wagoner Community Hospital (Wagoner). Second, plaintiff argues that the Magistrate Judge was incorrect in finding no error in the ALJ's credibility assessment.

The Report and Recommendation accurately describes the proceedings before the ALJ. Plaintiff protectively filed for disability insurance benefits on May 31, 2005. She claimed that she was unable to work since May 1, 2005 due to her alleged disability. Id. Plaintiff has organic and affective disorders. Plaintiff was voluntarily admitted to Wagoner on May 20, 2005, complaining of intense mood swings, thinking of hurting her common-law husband/boyfriend, crying spells and suicidal ideations. Dkt. #13-2, at 23. Her global assessment of functioning (GAF) score was 30 upon admission, and 50 upon discharge. Id. at 23-24. She then went for outpatient treatment at CREOKS behavioral health services starting June 23, 2005. Id. at 74. Her discharge plan from CREOKS states that she had been noncompliant with treatment, and that her GAF score was 52 upon admission, and 53 upon discharge. Id. at 100.

The ALJ issued his decision on November 15, 2007, finding that plaintiff was not disabled. Dkt. # 13, at 21. He found that plaintiff has the residual functional capacity to perform medium work. Dkt. # 13, at 18. He found that she must not have contact with the public while at work, but that she could interact with her co-workers and supervisors on a superficial level. Id. He found that she was able to return to her past relevant work as a package sealer, and that there are a significant number of jobs in the national economy that she could perform. Id. at 20. As the Magistrate Judge correctly noted, Dkt. # 16, at 2, plaintiff's case was thus decided at step four of the five-step sequential evaluation process used to determine disability. 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). The Social Security Administration Appeals Council denied plaintiff's request for review on September 11, 2008. Dkt. # 13, at 7.

This Court reviews a final decision of the Commissioner to determine whether "it is supported by substantial evidence and whether the Secretary applied the correct legal standards."

Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This Court will not weigh the evidence or substitute its judgment for the Commissioner's. Cagle v. Califano, 638 F.2d 219, at 220 (10th Cir. 1981).

Plaintiff argues that the ALJ did not correctly analyze the medical evidence. She argues that the ALJ erred by failing to include a discussion of her treatment at Wagoner. The Magistrate Judge found no error in the ALJ's failure to include these details in his opinion. Dkt. # 16, at 3-4. Plaintiff now argues that the ALJ improperly ignored the global assessment of functioning (GAF) scores on admission to and discharge from Wagoner, and the intake assessment provided by the hospital. Plaintiff argues that the ALJ mentioned the GAF scores from CREOKS and "ignored the scores . . . from Wagoner because [the Wagoner scores] were either under 50 or set at 50" this "allows the ALJ to circumvent any substantive discussion of the low GAF scores found in the Wagoner Community Hospital notes." Dkt. # 17, at 2-3.

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). The record in this case shows that the ALJ did consider plaintiff's hospitalization at Wagoner. The decision notes that "CREOKS' records referred to the claimant's hospitalization in Wagoner . . . ." Dkt. # 13, at 19. There is no evidence in the record to support plaintiff's assertion that the ALJ improperly ignored the Wagoner GAF scores. Plaintiff is correct that the ALJ must discuss "significantly probative evidence he rejects." Clifton, 79 F.3d at 1010. However, plaintiff does not

explain why the Wagoner GAF scores are "significantly probative."[1] The record as a whole supports the ALJ's conclusion that plaintiff has the residual functional capacity to perform medium work and her past relevant work as a package sealer. Therefore, "in light of the entire record" the evidence regarding plaintiff's hospitalization at Wagoner is not "'significantly probative' and the ALJ did not error in failing to discuss it." Wall v. Astrue, 561 F.3d 1048, 1067 n.27.

Plaintiff also argues that the ALJ erred in his credibility determination. The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," in part because plaintiff's mental status has improved when she is compliant with her medications, but that she has been noted to have been non-compliant. Dkt. # 13, at 19. Plaintiff argues that the ALJ erred because he did not compare her statements during the hearing with statements she made "in other situations." Dkt. # 17, at 4. She also argues that the ALJ erred in relying strictly on the rule that it is the claimant's responsibility to follow her treatment plan. Id.

"Credibility determinations are peculiarly the province of the finder of fact . . . and we will not upset such determinations [if they are] supported by substantial evidence." Winfrey, 92 F.3d at 1020 (quoting Diaz v. Sec'y of Health and Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)).

---

[1] Plaintiff does not explain how a "substantive discussion of the low GAF scores" that the ALJ allegedly "circumvented" would result in a determination that she was disabled. The ALJ did specifically discuss plaintiff's GAF scores upon admission and discharge from CREOKS, and noted that her score barely changed. Dkt. # 13, at 19. He found that plaintiff's noncompliance was the principal cause for "her static GAF scores from CREOKS." Id. The plaintiff's GAF scores from Wagoner, which predate her admission to CREOKS, would not be relevant to her subsequent progress or noncompliance. In fact, the improvement in plaintiff's GAF scores during her time at Wagoner supports the ALJ's conclusion that plaintiff's function could improve with treatment.

The Court finds that the ALJ's credibility determination is supported by substantial evidence in the record, including the progress note from CREOKS regarding success with her treatment, and the note in her discharge plan that she was noncompliant. Dkt. # 13, at 19. Plaintiff argues that the ALJ erred by not comparing plaintiff's statements during the hearing with statements she made in other situations. Dkt. # 17, at 4. The record indicates that the ALJ did consider statements made in other situations. The ALJ noted "when she was employed, there were times she was too angry toward her co-workers to come in for work."[2] Dkt. # 13, at 19. Thus, the ALJ credited plaintiff's statements to that effect. The ALJ did not err by omitting a comparison from his opinion.

Plaintiff also argues that the ALJ erred by relying "strictly" on 20 C.F.R. §§ 404.1530(a)[3] and 416.930(a) in this case. The regulations state that "in order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work," and "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ." "In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability," this Court considers "whether the refusal was without justifiable excuse." Frey v. Brown, 816 F.2d 508, 517 (10th Cir. 1987). The ALJ's conclusion that plaintiff has not followed

---

[2] Further, it is not clear how any such further comparison would help plaintiff's case. The ALJ's credibility determination was based primarily on plaintiff's noncompliance with treatment. Plaintiffs' prior statements that she gets mad at work and leaves, e.g. Dkt. # 17, at 3, are not relevant to plaintiff's noncompliance.

[3] The ALJ erroneously refers to 20 C.F.R. §1430(a) in his opinion, but correctly refers to 20 C.F.R. §404.1530(b) in the next sentence. Dkt. # 13, at 19-20. The record clearly shows that the ALJ applied 20 C.F.R. §404.1530. Plaintiff does not argue that the ALJ applied the wrong regulation in this case, Dkt. # 17, at 4, and the Court finds that the ALJ applied the correct legal standard, despite this typographical error.

her prescribed treatment is supported by substantial evidence in the record. The ALJ specifically mentioned the CREOKS discharge plan in which she is noted to be noncompliant. Dkt. # 13, at 19.

Plaintiff does not argue that this rule is inapplicable, but asks this Court to temper its application to claimants with mental illnesses.[4] Dkt. # 17, at 4. Essentially, plaintiff asks this court to find that her mental illness is a "good reason" for her noncompliance with treatment. However, the Tenth Circuit has upheld an ALJ's disability determination that was based, in part, on the claimant's refusal to follow treatment for mental illness. See McDaniel v. Apfel, No. 97-5042, 1997 WL 699064, at *1 (10th Cir. Nov. 10, 1997) (unpublished).[5] The regulations provide examples of "good reasons" for not following treatment. 20 C.F.R. §§ 404.1530(c), 416.930(c). None of these examples is analogous to plaintiff's case. Based on the evidence in the record, the ALJ could properly conclude that plaintiff did not have "good reason" for failing to follow her prescribed

---

[4] Plaintiff asks this Court to adopt the Ninth Circuit's approach in Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999). Regennitter does not fully support plaintiff's argument. In that case, the Ninth Circuit held that the ALJ could not rely on a claimant's failure to seek treatment because of his poverty. In that case the claimant's failure to get treatment was not a result of his mental illness. Id. Further, the court in Regennitter cited Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996), in which the Ninth Circuit determined that a claimant's failure to seek treatment for depression was not a proper basis to discredit a doctor's diagnosis, because depression is an under reported illness. In contrast, here plaintiff reported her mental illness, but did not comply with treatment. Therefore, these Ninth Circuit decisions are not persuasive in this case.

[5] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1

treatment. This Court finds that the ALJ correctly applied the correct legal standards to this case, and that his conclusions are supported by substantial evidence in the record.[6]

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. #16) is **accepted**; the Plaintiff's Objection to the Report and Recommendations of the Magistrate (Dkt. # 17) is **overruled**; and the Commissioner's decision is **affirmed**.

**IT IS FURTHER ORDERED** that a separate judgment is entered herewith.

**DATED** this 6th day of October, 2009.

　　　　　　　　　　　　　　　　　　　　　　　　_Claire V. Eagan_
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] Further, a finding that the ALJ erred in not taking plaintiff's mental illness into account when discussing 20 C.F.R. §§404.1530 and 416.930 would not change the outcome of this case. The ALJ properly found that plaintiff was able to perform past relevant work, and therefore was not disabled. Dkt. # 13, at 18, 20. The ALJ did not deny benefits solely on plaintiff's failure to follow prescribed treatment. Cf. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989) ("we need not consider [the issue of whether claimant's failure to follow prescribed treatment deprives her of any right to disability benefits] because the ALJ found that [she] was capable of sedentary work in her present condition.").